# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CARON JEAN SEPHEL,**

   **Plaintiff,**

  v.

**COMMISSIONER OF**
**SOCIAL SECURITY,**

   **Defendant.**

**Case No.: 2:16-cv-873**
**JUDGE GEORGE C. SMITH**
**Magistrate Judge Deavers**

## OPINION AND ORDER

Plaintiff, Caron Sephel, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the Court for an Order on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply in Support (ECF No. 19), and the administrative record. (ECF No. 9.) For the reasons that follow, the Court **OVERRULES** the Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed her application for benefits on June 7, 2011, alleging disability beginning August 24, 2004.[1] (R. at 254.) Plaintiff's applications were denied initially on December 27, 2011, and upon reconsideration on January 11, 2013. (R. at 11.) Plaintiff sought a *de novo*

---

[1] Although the ALJ stated Plaintiff's alleged filing date was May 23, 2011, Plaintiff's applications reflect that she filed her application on June 7, 2011. (R. at 254.)

hearing before an administrative judge, who affirmed the Social Security Administration's denial of her claim on March 11, 2013. (R. at 11.) On January 15, 2015, the Appeals Council vacated the decision and remanded the case for further consideration of her residual functional capacity, suggesting that the decision did not include a sufficient rationale to support a finding that she was restricted to sedentary work. (*Id.*) Administrative Law Judge John L. Shailer ("ALJ") then held a hearing on June 9, 2015, at which Plaintiff, represented by counsel, appeared through video and testified. (R. at 44–57.) Bruce Growich, a vocational expert ("VE") and Ronald Kendrick, M.D., an impartial medical expert ("ME") also appeared and testified at the hearing. On August 12, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On July 12, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's second decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony[2]

Plaintiff testified that she is currently staying with a friend and has been staying with her friend for seven years. (R. at 54–55.) She also testified that her case manager has been helping her by attending appointments with her, that she found an attorney for the hearing, who helps her fill out forms. (R. at 53.)

---

[2] The majority of Plaintiff's testimony is related to her physical ailments that are not at issue at this time.

B.  **Vocational Expert**[3]

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 61–66.) Based on Plaintiff's age, education, work experience, and residual functional capacity, the VE testified that a similarly situated hypothetical individual could perform the job of "machine tender/feeder" with 285,000 jobs nationally and 6,200 jobs in Ohio, and 1,400 jobs in central Ohio, as well as perform work in light assembly, with 450,000 jobs nationally, 8,200 jobs in Ohio, and 3,600 jobs in central Ohio. (R. at 61–62.)

### III.  MEDICAL RECORDS

A.  **Sudhir Dubey, Psy. D.**

On July 26 2011, Plaintiff underwent a psychological evaluation conducted by Dr. Dubey. (R. at 369.) She reported to Dr. Dubey that she is married but has been separated from her husband for six years and has since been in a three-year relationship with her boyfriend, with whom she lives. (R. at 369–70.) Plaintiff reported that she takes pain medication, which she finds helpful but has not previously received psychiatric treatment. (R. at 370.) Dr. Dubey noted that Plaintiff has substance abuse problems. He described her appearance as appropriate and her mannerisms and eye contact as within normal limits. (R. at 371.) He also noted that "[s]he reports she was really drunk," without explaining if Plaintiff was under the influence of alcohol at the examination. (*Id.*) He found Plaintiff's speech was coherent, her thought process to be tangential, and her speed and quality of speech to be within normal limits. (*Id.*) He further found she "appeared to be oriented to person, place, and time and evaluation [sic] situation. She

---

[3] Medical Expert Ronald Kendrick, a physician and board certified orthopedic surgeon also testified to Plaintiff's physical capabilities. Because Plaintiff only disputes the ALJ's findings in regards to her mental impairments, Dr. Kendrick's testimony is irrelevant here.

exhibited alert and responsive behavior. Trouble concentrating was not observed. Trouble remembering was not observed." (R. at 372.)

Dr. Dubey further found Plaintiff was inconsistent with the information she provided during the interview. (*Id.*) He noted "[f]or example, her symptoms are inconsistent with the mental health condition she reported, she reported mental health problems with no observable symptoms, stated significant anxiety, leaving home or being around others, no problems observed in evaluation, reported problems dealing with others but interacted appropriately throughout the evaluation." (*Id.*) He concluded that "she appeared to be magnifying reported symptoms." (*Id.*) In contrast to his observations, however, Dr. Dubey concluded that Plaintiff's "behavior during the evaluation situation was distractible. In a work setting, based on the available information, she would not be able to maintain attention, concentration, persistence, and pace to perform simple and multistep tasks." (R. at 374.)

**B.   Julie Brun**

Department of Disability adjudicator Julie Brun contacted Plaintiff on June 30, 2011. (R. at 285.) Plaintiff reported that she has bipolar disorder and anxiety but that she does not receive treatment for either impairment. (*Id.*) Ms. Brun reported that it was extremely difficult to get information from Plaintiff, and noted inconsistencies from Plaintiff's "ranting" including her claim that she is unable to perform household chores but that she "cleans the place so she doesn't live in filth but this takes her all day." (*Id.*) She also stated that she does not go grocery shopping but later reported that she "might go to the store once a month." (*Id.*)

**C.   Daniel Winkle, M.D.**

Dr. Daniel Winkle examined Plaintiff on August 27, 2011, to perform an independent consultative examination. He noted that Plaintiff "was extremely distractible, tangential and

4

difficult to keep her on topic." (R. at 376.) Plaintiff reported that she had previously received care for her pain from Dr. Gatto Helping Hands, but that she did not intend to return to that physician because Dr. Gatto would not provide her "with stronger pain pills." (*Id.*) She also reported that she has difficulty with bipolar disorder and panic attacks but "she had a very difficult time expanding on any details of this." (*Id.*) Dr. Winkle wrote that Plaintiff "refused the big majority of the musculoskeletal exam including palpation, straight leg raise testing Spurling's maneuver, palpation of the soft tissue mass." (R. at 378.) He diagnosed a possible somatoform disorder based on her belief that her spinal cord was outside of her spinal canal, and recommended a psychological examination. (*Id.*)

**D.     Dr. Charles Paugh**

On December 21, 2011, Dr. Paugh completed a mental health assessment. (R. at 407.) He indicated that Plaintiff was "markedly limited" in the ability to work with others without being distracted as well as in her ability to complete a normal workweek without interruptions from psychologically based symptoms. (*Id.*) He marked that the symptoms would last between nine and eleven months. (*Id.*)

**E.     Cooperative Disability Investigations Unity Report**

The Cooperative Disability Investigations Unit ("CDI") opened an investigation on October 20, 2011, "as a result of an allegation of fraud or similar fault" against Plaintiff by the Ohio Disability Determination Service ("DDS"). (R. at 393.) DDS asked CDI to resolve five areas of conflict existing between Plaintiff's medical evidence and her statements regarding her alleged limitations. For example, the detectives were tasked with describing Plaintiff's "ability and willingness to participate in the interview and to answer questions. Is she able to answer

questions with relevant responses? Is she able to stay on topic, or is she distracted and unable to focus on the discussion?" (*Id.*)

Then, on November 16, 2011, two detectives went to Plaintiff's home and discussed an unrelated law enforcement matter with her in order to assess her behavior at a time when she believed she was not being examined for disability benefits. (R. at 396.) The detectives noted that Plaintiff was capable for answering all questions and that she asked questions of her own. They noted that she seemed comfortable speaking with the detectives and exhibited no difficulty with her recollection of dates and events from the past. They further reported that she did not appear nervous, afraid, delusional, fearful, apprehensive, or confused. (*Id.*) Plaintiff stated that she shops for groceries, goes for walks in her neighborhood, and uses public transportation. (*Id.*)

The report also noted that on September 13, 2011, Plaintiff filed a police report where she alleged that an unknown male assaulted her while she was "partying" at a home not listed as her residence. (R. at 396–97, 402.)

**F.     Keith Adams**

Disability claims adjudicator Keith Adams considered the evidence in Plaintiff's case record and concluded that Plaintiff committed similar fault in connection with her disability claim, reasoning as follows:

> There is reason to believe that the claimant knowingly provided incorrect information regarding her daily activities. Evidence shows she is able to communicate clearly and effectively with others. She is able to answer questions and provide relevant personal history without difficulty. Evidence shows she performs her own shopping and goes for walks in the area, in contrast to her statements that she has panic attacks and runs away in unfamiliar situations. The police report the claimant filed in 9/11 indicates she is able to go out and socialize with others in unfamiliar settings.

(R. at 289.) He therefore determined that reports based on input from Plaintiff should be disregarded. (*Id.*)

6

## IV. ADMINISTRATIVE DECISION

On August 12, 2015, the ALJ issued his decision. (R. at 11–28.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially gainful activity since May 23, 2011, which he referred to as Plaintiff's application filing date.[5] The ALJ found that Plaintiff had the severe impairments of degenerative disease of her cervical and lumbar spine and bilateral carpal tunnel syndrome. (R. at 13.)

The ALJ determined that although the record documents mental impairments, including mood disorder, schizophrenia, bipolar disorder, polysubstance abuse, mood disorder, etc., Plaintiff's "presentation and subjective reports were substantially not credible and thus call into question the diagnoses of medically determinable mental impairments." (R. at 14.) In making this determination, the ALJ agreed with the Ohio Division of Disability Determination's ("ODDD") and found "similar fault" based on a Cooperative Disability Investigations Unit ("CDI") report, which documented inconsistencies with regard to Plaintiff's alleged disability

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).
[5] Based on the record, it appears Plaintiff actually filed her application on June 7, 2011. (R. at 254.)

and functional limitations. (R. at 15.) The ALJ found that evidence in the CDI report as well as "observations by other sources in the record" suggest Plaintiff had a "conscious decision to deceive." (R. at 16.)

The ALJ alternatively determined that Plaintiff's mental impairments were "mild." The ALJ explained as follows:

> Even if one were to assume medically determinable mental impairments, the credible portion of the claimant's statements, including activities of living, indicate no more than "mild" limitation in the four broad functional areas . . . activities of daily living, social functioning, concentration/persistence/pace, and extended episodes of decompensation.

(R. at 14.) The ALJ then examined in-depth each of the four functional areas. He found that in reviewing the record as a whole, Plaintiff's reported daily activities, including cleaning, cooking, using public transportation, shopping, talking on the phone with friends, taking care of her cat, partying at another's residence, reflect a finding of "mild difficulties in daily living."

He also found that Plaintiff only had mild limitations in social functioning. He based this determination in part on evidence reflecting that she lives with her boyfriend and other friends, when observed in a new environment, dealing with new people, Plaintiff was reported to have been frank and cooperative, and other evidence in the record repeatedly reflecting Plaintiff's social limitations were not as limited as she described. (R. at 16.)

In the third functional area, concentration, persistence, or pace, the ALJ again found that Plaintiff only had mild limitations. (R. at 17.) He reviewed Dr. Dubey's treatment notes observing Plaintiff's thought processes were coherent, tangential, and within normal limits. (*Id.*) He also reviewed other evidence in the record consistent with Dr. Dubey's observations, as well as the CDI report in which "[s]he was noted to be capable of answering all questions and asking questions of her own, exhibited no difficulty with recollection of dates, and her memory of

events from the past seemed good." (*Id.*) Finally, the ALJ found that Plaintiff never experienced episodes of decompensation that were of an extended duration. (*Id.*)

He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P. Appendix 1. (R. at 18.) As step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently, sit for six hours in a workday, stand and/or walk six hours total in a workday, frequently use her upper extremities, and occasionally bend, crawl, squat, stoop, and kneel but never climb ladders or work at high places or around dangerous machinery.

(R. at 18.) In reaching this determination, the ALJ gave Dr. Dubey's opinion "little weight," finding that Dr. Dubey's "suggested limitations are belied by his other observations and opinion that the claimant appeared to magnify symptoms." (R. at 24.) He similarly gave "little weight" to the opinion of Dr. Paugh, who indicated moderate and marked mental work-related limitations. He found Dr. Paugh's opinion inconsistent with the "credible portion of activities of daily living evidence" and that the opinion was not supported by objective medical evidence, as well as "highly dependent" on Plaintiff's reports of symptoms and limitations. (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs existing in the national and local economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act.

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

9

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff argues that the ALJ's finding of "similar fault" under SSR 00-2p is not supported by a preponderance of the evidence. In support of this contention, she argues that the ALJ relied on "cherry-picked" evidence to support his determination. She further argues that the

ALJ did not satisfy his burden at step five of the sequential-evaluation process in determining Plaintiff's residual functional capacity because he failed to include mental health limitations.

A.   **The ALJ's finding of "similar fault" is supported by substantial evidence**

SSR 00-02p,[6] provides "that evidence shall be disregarded if there is reason to believe that fraud or similar fault was involved in the providing of that evidence." SSR 00-02p, 2000 WL 253695, at *1 (February 25, 2000). A "similar fault" finding is only allowed "if there is reason to believe, based on a preponderance of the evidence, that the person committing the fault knew that the evidence provided was false or incomplete." (*Id.* at *2.) Similar fault is defined as when "an incorrect or incomplete statement that is material to the determination is knowingly made" or when "information that is material to the determination is knowingly concealed." (*Id.*) A statement is made "knowingly" if the person providing the statement knows it to be false or incomplete.

"Although the ALJ must make his decision based on a preponderance of the evidence, *see* SSR 00-2p, this Court may set aside an ALJ's decision only where it is not supported by substantial evidence or where the decision is based on legal error." *Hynek v. Astrue*, Case No. 10-149-BLG-CSO, 2012 WL 460473, at *8 (D. Mont. Feb. 13, 2012) (upholding the ALJ's similar fault finding where the finding was based in-part on an investigation similar to the CDI report) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

As detailed above, in the instant case, the ALJ found "similar fault" based on the CDI report and observations in the record he determined reflected Plaintiff's "conscious effort to deceive." (R. at 14–18.) Plaintiff argues that while the similar fault determination "might have

---

[6] SSR 00-2p was in effect at the date of the ALJ's most recent decision. The ruling has since been rescinded and replaced with SSR 16-2p.

been supported by a preponderance of the evidence available in April 2012," Plaintiff's treatment records since 2012 have rendered the similar fault finding "obsolete." The Court disagrees.

The CDI report reflects vast discrepancies between Plaintiff's reports and presentation during examinations and her behavior when she was under the impression that any observations would not affect her disability application. (R . at 391–405.) For example, Plaintiff reported that she has panic attacks when in a situation in which she does not have control, and exhibited behavior reflecting an inability to focus such as "talking non-stop" as well as "speaking loudly, rambling, [and] not making a lot of sense," when she presented for examinations related to her disability application. (R. at 620, 500.) However, when investigators visited Plaintiff at her home under the pretense of discussing an unrelated law enforcement matter, Plaintiff exhibited none of the reported behaviors. (R. at 396.) Instead, inspectors reported that Plaintiff "did not appear anxious or depressed" that she spoke with a "slightly slurred speech" but maintained appropriate eye contact. (*Id.*) Plaintiff, moreover, "seemed comfortable talking with the detective," and was found to be "capable of answering all questions, and she asked questions of her own." (*Id.*) The ALJ, moreover, observed that Plaintiff was able to closely follow the hearing proceeding and "fully respond to questions in an appropriate manner." (R. at 27.) The ALJ therefore sufficiently supported his "similar fault" determination.

Moreover, a review of Plaintiff's treatment records since the CDI report reveals Plaintiff's noncompliance with treatment. Dr. Paugh prescribed her antidepressants, but she reported in her May 2012 disability report that she was not taking the prescribed medications. (R. at 317.) Further, Plaintiff's medical records reflect that prescribed medications, when she is compliant, help improve any existing impairments. (R. at 563.) Plaintiff's treatment record also reflects her repeated missed appointments. (R. at 652, 653.) The ALJ's "similar fault"

determination is supported by substantial evidence. *Hensley v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-711, 2016 U.S. Dist. LEXIS 185208, at *35 n.17 (S.D. Ohio Nov. 23, 2016) ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under disability.") (quoting SSR 82-59, 1982 WL 31384 (Jan. 1 1982)).

In any event, Plaintiff has failed to adduce any contrary evidence to rebut the ALJ's reasonable analysis which led him to conclude that she had no debilitating mental limitations. Plaintiff further alleges that the ALJ "cherry-picked" the evidence to support his findings. (SOE at 19.) This claim disregards the ALJ's thorough review of Plaintiff's alleged impairments. (R. at 27.) The ALJ is not required to cite to every piece of evidence in the record in his written decision as Plaintiff claims. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."). The Court finds that the ALJ's thorough review of Plaintiff's medical records, the CDI report, and Plaintiff's daily activities supported his determination that Plaintiff did not suffer any severe mental impairment. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'")).

**B. The ALJ's hypothetical at step five incorporated Plaintiff's credible limitations**

Plaintiff finally argues that the ALJ erred at step five of the sequential process because the hypothetical question to the vocational expert did not include any mental health conditions. The ALJ, however, did not err because he found Plaintiff's mental impairments to be mild, and therefore unnecessary of incorporation. As discussed in detail above, the Court agrees. The ALJ reasonably found Plaintiff's account of her limitations unreliable under the similar fault doctrine such that she fails to rebut or show that she could not do the unskilled work identified by the VE. *Stanley v. Sec'y of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."); *see also Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (ALJ required to incorporate only those limitations accepted as credible in hypothetical to VE.). Accordingly, the ALJ's determination was supported by substantial evidence.

## I. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and to terminate this case.

**IT IS SO ORDERED.**

  *s/ George C. Smith*  
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**